# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

EDWARD B. AVERY, SR.,

                                        **Case No. 2:18-cv-387**

    **Petitioner,**                        **Judge Michael H. Watson**

                                         **Magistrate Judge Kimberly A. Jolson**

    **v.**

WARDEN, MARION
CORRECTIONAL INSTITUTION,

    **Respondent.**

### ORDER and
### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on Petitioner's Motion to Hold Action in Abeyance (Doc. 2) and Respondent's Motion to Dismiss (Doc. 6). For the reasons that follow, the Undersigned **RECOMMENDS** that Respondent's Motion be **DENIED**. Further, Petitioner's Request to Hold Action in Abeyance (Doc. 2) is **DENIED as moot**.[1]

## I. INTRODUCTION

This case is unique. In 2010, Petitioner, a pro se state prisoner, received a new judgment after he was resentenced in Ohio state court. After the conclusion of his direct appeal, he timely filed a federal habeas petition in 2013 (the "2013 Petition"). The sole impediment to Petitioner proceeding with that petition was a 2014 order from the Sixth Circuit (the "2014 Order") finding that the 2013 Petition was second or successive. Once Petitioner learned of new Sixth Circuit case law that could potentially remove that impediment, he promptly filed a motion for leave to file a

---

[1] Ohio does not permit delayed appeals in post-conviction proceedings. Ohio S.Ct.Prac.R. 7.01(4)(c) ("The provision for delayed appeal does not apply to appeals involving postconviction relief[.]"). Therefore, Petitioner's request for a stay of proceedings pending resolution of this action (Doc. 2) is **DENIED as moot**.

second or successive petition. In 2018, the Sixth Circuit recognized the merits of Petitioner's motion and issued an order (the "2018 Order"), concluding that its 2014 Order was erroneous and that the instant Petition (Doc. 1) was not second or successive. Indeed, it found that Petitioner "faces no procedural impediment to filing a new § 2254 action in the district court and does not need the authorization of this court to file such an action." (Doc. 1-1, PAGEID #: 24). Petitioner quickly filed this action. Because extraordinary circumstances prevented Petitioner from timely filing the instant Petition, and because Petitioner has been diligent in pursuing his rights, the Undersigned finds that he is entitled to equitable tolling and should be allowed to proceed with his Petition.

## II. BACKGROUND

### A. State Conviction and Initial Challenges

In 1997, a jury in the Union County Court of Common Pleas convicted Petitioner of rape, robbery, aggravated burglary, and kidnapping. (Doc. 5, PAGEID #: 50–51). The trial court sentenced him to an aggregate sentence of thirty years of imprisonment and designated him a sexual predator. (*Id.*, PAGEID #: 58–61).

Over the next decade, Petitioner unsuccessfully challenged his conviction in state and federal court. (*See* Doc. 1-1, PAGEID #: 22) (summarizing Petitioner's direct appeal and post-conviction relief efforts)). Petitioner filed his first federal habeas petition in 1999, which this Court dismissed without prejudice to allow him to exhaust his state court remedies. (*See* Doc. 9-1, PAGEID #: 1015). Petitioner filed a second federal habeas petition in 2002, which this Court dismissed as untimely. (*See* Doc. 5-2, PAGEID #: 847–55; *id.*, PAGEID #: 864).

### B. 2010 Resentencing

In 2010, Petitioner moved for resentencing on the basis that the trial court did not include a mandatory term of post-release control in his original judgment entry. (Doc. 5-1, PAGEID #: 561–64). The trial court agreed, granted Petitioner's motion, and scheduled a de novo sentencing hearing. (*Id.*, PAGEID #: 571–73). On November 23, 2010, the trial court held the de novo sentencing hearing, sentenced Petitioner to an aggregate sentence of thirty years with credit for time served and a mandatory five-year term of post-release control, and designated Petitioner a sexual predator. (*Id.*, PAGEID #: 574–85). The Third District Court of Appeals affirmed the sentence, and the Ohio Supreme Court denied leave to appeal and dismissed the appeal on January 18, 2012. (*Id.*, PAGEID #: 682–90; *id.*, PAGEID #: 728). Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court within the required ninety days, and his judgment became final on April 17, 2012. *See* 28 U.S.C. § 2244(d)(1)(A).

### C. 2013 Habeas Petition

In light of the new judgment, Petitioner filed a third habeas petition on January 23, 2013 (the "2013 Petition"). (Doc. 5-2, PAGEID #: 865–70). Respondent moved to dismiss the 2013 Petition, or, in the alternative, to transfer it to the Sixth Circuit. *See Avery v. Bunting*, 2:13-cv-00097-GLF-TPK, Doc. 12 (S.D. Ohio). In his July 2013 Report and Recommendation, the Magistrate Judge recommended that case be transferred to the Sixth Circuit as second or successive. (*See* Doc. 9-1, PAGEID #: 985–994). He explained:

> Here, Petitioner challenges his 1997 state court conviction, raising claims that were, or could have been, previously asserted. Further, although he has been resentenced, petitioner does not raise any issues directed to his resentencing or the subject of postrelease control. Because the petition attacks the underlying conviction and not petitioner's resentencing, his petition is a second petition within the meaning of 28 U.S.C. § 2244(b).

(*Id.*, PAGEID #: 991).

Petitioner objected to the Report and Recommendation. *See Avery v. Bunting*, 2:13-cv-00097-GLF-TPK, Doc. 19 (S.D. Ohio). Relying on the Supreme Court's decision in *Magwood v. Patterson*, 561 U.S. 320 (2010), he argued that his 2010 resentencing resulted in "a new judgment" that allowed him to challenge his original, underlying conviction, and, therefore, the 2013 Petition was not successive. *See Avery v. Bunting*, 2:13-cv-00097-GLF-TPK, Doc. 19 at 2 (S.D. Ohio). This Court overruled those objections and rejected Petitioner's argument regarding his 2010 resentencing. (*See* Doc. 5-2, PAGEID #: 883 ("The Court is cognizant of the fact that Petitioner was resentenced by the state court in November 2010, long after the disposition of Petitioner's first two habeas corpus petitions. But this circumstance is of no moment. Petitioner's current petition challenges his 1997 state court conviction; it does not raise any issues related to the November 2010 resentencing or any issues related to post-release control, which was formally imposed at resentencing.")).

Before the Sixth Circuit, and without the aid of counsel, Petitioner moved for an order authorizing this Court to consider a second or successive petition and raised the same argument: His 2013 Petition was not second or successive because his 2010 resentencing resulted not just in a new sentence, but rather in a new judgment. *In re: Edward Avery, Sr.*, 13-4098, Doc. 11 at 2 (6th Cir. Oct. 23, 2013); (*see also* Doc. 1-1, PAGEID #: 23 ("Relying on *Magwood v. Patterson*, 561 U.S. 320 (2010), Avery asserted that his proposed habeas petition was not second or successive because his prior habeas petitions challenged a judgment that was rendered void and he now challenged a new judgment issued after resentencing.")).

In its unpublished May 21, 2014 Order (the "2014 Order"), the Sixth Circuit disagreed, reasoning:

The Supreme Court emphasized that the petitioner in *Magwood* sought to challenge his resentencing only and expressly declined to address a situation in which a petitioner challenges "not only his resulting, *new* sentence, but also his original, *undisturbed* conviction." The Supreme Court noted, without overruling or casting doubt upon, this court's prior ruling "that a petitioner who succeeds on a first habeas application and is resentenced may challenge only the 'portion of a judgment that arose as a result of a previous successful action.'" Avery's proposed claims do not relate to his resentencing and the imposition of post-release control. . . . Accordingly, Avery's proposed habeas petition is second or successive.

(Doc. 5-2, PAGEID #: 896 (internal citations omitted)).

At that moment in time, Petitioner was effectively out of options to pursue habeas relief. He could not request that the panel or the Sixth Circuit en banc rehear his petition, and he could not file a petition for a writ of certiorari with the United States Supreme Court. 28 U.S.C. § 2244(b)(3)(E); *see also In re King*, 190 F.3d 479, 480 (6th Cir. 1999) (en banc) ("[O]nce a panel of this court grants or denies an individual permission to file a second or successive petition in the district court, § 2244(b)(3)(E) prohibits any party from seeking further review of the panel's decision, either from the original panel or from the en banc court."). But subsequent decisions of Sixth Circuit offered him an avenue for possible relief.

### D. *King v. Morgan*

At the same time Petitioner was litigating whether a petition filed after a resentencing and the entry of a new judgment was second or successive, so too was another Ohio state prisoner, DeLawrence King. *See generally DeLawrence King v. Donald Morgan*, Case No. 13-4189, Doc. 16 (6th Cir.). Like Petitioner, King was convicted in state court and his attempts to vacate his sentence on direct appeal and through collateral attack were unsuccessful. *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015). Like Petitioner, "King asked the state trial court to vacate his sentence because it failed to include mandatory post-release control," and the trial court granted that request. *Id.* Like Petitioner, after resentencing in state court, King sought to challenge his

undisturbed underlying convictions with a new federal habeas petition, but the district court concluded that the majority of claims in the new petition were second or successive.  *Id.*

Unlike Petitioner, however, King had counsel when proceeding before the Sixth Circuit. And rather impressive counsel at that:  The Sixth Circuit appointed Paul Clement, the former United States Solicitor General and one of the country's leading appellate advocates, to represent King.  *See DeLawrence King v. Donald Morgan*, Case No. 13-4189, Doc. 16 (6th Cir. Dec. 8, 2014).  Erin Murphy, a former Supreme Court clerk and Bristow Fellow, and an impressive appellate advocate in her own right, also represented King.  *See id.*, Doc. 18.  On behalf of King, they relied on *Magwood* and argued that "the first petition challenging a new judgment is not a 'second or successive' petition because AEDPA focuses on the judgment that a petition challenges, not the claims that it raises."  *Id.*, Doc. 22 at 11; *see also id.* at 11–30 (developing this argument).

The Sixth Circuit agreed with King, extending the reasoning of *Magwood* to permit challenges to an undisturbed conviction following the entry of a new judgment.  Writing for the unanimous panel, Judge Sutton explained that "*Magwood* tells us, no part of the petition counts as second or successive as long as it is the first to challenge the new judgment."  *King*, 807 F.3d at 157 (citing *Magwood*, 561 U.S. at 332).  "That means that, if an initial federal habeas petition (or state-court collateral challenge) leads to an amended judgment, the first petition that follows the entry of the new judgment is not second or successive, even if it raises claims that the inmate could have raised in the first petition."  *King*, 807 F.3d at 157 (citing *Magwood*, 561 U.S. at 328–29).

In short, Petitioner and King had the same legally relevant facts and made the same legal arguments before the Sixth Circuit.  King, however, was granted relief, while Petitioner was not.

E.    *In re Stansell*

Shortly after the decision in *King*, the Sixth Circuit issued *In re Stansell*, 828 F.3d 412 (6th Cir. 2016). After pleading guilty to "multiple sex-related felonies," Stansell was sentenced to twenty years to life in prison and designated a sexual predator. *Id.* at 414. His challenges to his conviction and sentence were unsuccessful on direct appeal and in federal habeas proceedings. *Id.*

In 2013, he moved the state trial court to vacate the portion of his sentence designating him a sexual predator. *Id.* The trial court denied the motion, and the appeals court affirmed, but remanded Stansell's case "for the limited purpose of properly advising and imposing upon Stansell the requisite period of postrelease control." *Id.* (citation and internal quotation marks omitted).

After being partially resentenced and receiving a new judgment imposing the mandatory period of post-release control, Stansell returned to federal court and requested authorization to file a second or successive habeas petition. *Id.* His petition contained "one claim for relief, a claim that he also raised in his first petition." *Id.*

The Sixth Circuit applied the reasoning of *Magwood* and *King* to allow Stansell "to raise challenges to his (undisturbed) conviction, his (undisturbed) term of incarceration, and his (new) term of post-release control" based on his "partial resentencing" and the resulting new judgment. *Id.* at 416. Writing again for a unanimous panel, Judge Sutton explained that, "[w]hen a court alters a sentence to include post-release control, it substantially and substantively changes the terms under which an individual is held 'in custody.' 28 U.S.C. § 2254(a), (b)(1). That means it has created a new judgment for purposes of the second or successive assessment." *Id.* at 418. The Court therefore denied "Stansell's motion to file a second or successive habeas petition as unnecessary" and transferred his petition to the district court. *Id.* at 420.

### F.   2017 Motion for Leave to File Second or Successive Petition

During the evidentiary hearing in this case, Petitioner testified that he learns about developments in the law in two ways—he talks with other inmates and, at times, conducts his own research. (Doc. 18 at 7:3–9). A discussion with a fellow inmate, Ralph Blaine Smith ("Smith"), led to the filing of Petitioner's 2017 Motion for Leave to File Second or Successive Petition. (*Id.* at 7:22–8:6). In 2000, a jury convicted Smith of burglary, robbery, kidnapping, and theft. *In re Ralph Blaine Smith*, Case No. 16-4699, Doc. 9-2 at 1 (6th Cir. May 11, 2017). Smith unsuccessfully pursued direct appeals in state court and post-conviction relief in federal court. *Id.* In 2015, however, the state court resentenced him in order to notify him of post-release control. *Id.* at 2. Like before, Smith pursued relief through the state courts to no avail. Smith then returned to federal court, filing a new habeas petition in June 2016. *Id.* The district court concluded that the petition was second or successive and transferred the petition to the Sixth Circuit. *Id.* Relying on *King* and *Stansell*—which were now controlling precedent—the Sixth Circuit disagreed, and denied Smith's application to file a second or successive habeas petition as "unnecessary" and remanded the case to the district court. *Id.* at 3–4.

The Sixth Circuit's decision reversing the district court was issued on May 11, 2017, and Smith informed Petitioner of the decision shortly thereafter. (Doc. 18 at 12:25–13:5). Petitioner recognized that Smith's case was similar to his own but was unsure of how to proceed. (*Id.* at 12:25–14:11). Petitioner again turned to another inmate. Mark Keating, Petitioner's bunk mate, suggested that Petitioner file with the Sixth Circuit, and Petitioner began drafting a motion for leave to file a second or successive habeas petition. (*Id.* at 14:12–15:11). Petitioner worked on that motion in his spare time and filed it with the Sixth Circuit on July 21, 2017. (Doc. 5-2, PAGEID #: 898–910).

Four years after Petitioner made the same argument adopted in *King* and *Stansell*, the Sixth Circuit relied on those decisions and, in its February 21, 2018 Order (the "2018 Order"), provided Petitioner relief from its 2014 Order finding that the 2013 Petition was second or successive.  (*See* Doc. 1-1).  As the Court explained, in light of *King* and *Stansell*:

> Avery's 2010 resentencing resulted in a "new judgment," and his motion for an order authorizing the district court to consider a second or successive motion to vacate is therefore unnecessary.  Avery faces no procedural impediment to filing a new § 2254 action in the district court and does not need the authorization of this court to file such an action.
>
> Accordingly, we **DENY** as unnecessary Avery's motion for an order authorizing the district court to consider a second or successive habeas petition and **DENY** as moot his motion to take judicial notice.

(*Id.*, PAGEID #: 24).

### G. 2018 Petition

Approximately two months after the 2018 Order, Petitioner filed the current action. (Doc. 1).  Respondent subsequently filed a Motion to Dismiss Habeas Petition as Time-Barred. (Doc. 6).  Because of the complexity of the issues raised in the Motion, the Court appointed David J. Twombly of Organ Cole, LLP to represent Petitioner in responding to Respondent's Motion (*see* Doc. 8).  Mr. Twombly filed a Supplemental Memorandum in Opposition to Respondent's Motion to Dismiss Habeas Petition as Time-Barred (Doc. 9), and Respondent subsequently filed a Reply (Doc. 10).

After the reviewing the parties' briefs, the Court scheduled an evidentiary hearing for the limited purpose of determining "whether Petitioner diligently pursued his rights following the United States Court of Appeals for the Sixth Circuit's May 23, 2014 Order denying Petitioner's motion for an order authorizing the district court to consider a second or successive habeas petition."  (Doc. 11).  The evidentiary hearing took place on February 25, 2019, after which the

Court granted the parties the opportunity to file supplemental briefs based on the evidence presented at the hearing. The parties submitted their supplemental briefs (Docs. 19, 20), and the Motion is now ripe for resolution.

## III. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d). The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id*.

## IV.    DISCUSSION

According to Respondent, Petitioner's conviction became final for purposes of AEDPA's one-year statute of limitations in the late 1990s. (Doc. 6 at 19–20). Therefore, Respondent argues, Petitioner cannot now challenge that conviction in a habeas petition filed 18 years later. (*Id.*).

While Respondent recognizes that Petitioner was resentenced in 2010, she contends that the resentencing did not restart the statute of limitations clock because Petitioner is not challenging his sentence, but rather his underlying 1997 conviction. (*Id.* at 20–24). Finally, Respondent asserts, even if the 2010 resentencing did restart the statute of limitations clock for purposes of Petitioner challenging his conviction, Petitioner is not entitled to equitable tolling that would allow his 2018 Petition to survive AEDPA's one-year statute of limitations. (*Id.* at 27–29). The Court addresses each of these arguments in turn.

### A. *Crangle v. Kelly*

The parties rely on competing Sixth Circuit cases to determine whether Petitioner's 2010 resentencing and its corresponding new judgment reset AEDPA's statute of limitations clock. Respondent cites *Bachman v. Bagley*, 487 F.3d 979, 982 (6th Cir. 2007) ("*Bachman I*") and *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012), in support of her argument that "a resentencing . . . only restarts the statute of limitations for claims that challenge the resentencing judgment." (Doc. 6 at 20). Petitioner, however, relies on *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016) (per curiam), "for the proposition that a resentencing (even a partial one) creates a new judgment that resets the AEDPA statute of limitations as to all claims, both those attacking the new sentence and those attacking the original underlying conviction." (Doc. 9 at 1–2).

This distinction matters. If Respondent is correct, Petitioner's judgment became final for purposes of AEDPA almost two decades ago. Under Petitioner's view, however, his judgment became final in April 2012, and his 2013 Petition was timely filed.

*Crangle* resolves the parties' dispute. There, the petitioner pled guilty to one count of rape in February 2007. 838 F.3d at 675. After the conclusion of his direct appeal, the petitioner's judgment became final on December 20, 2008. *Id.* Nearly two years later, in November 2010, the state trial court entered a nunc pro tunc order and new judgment, correcting its earlier failure to

include a mandatory period of five years post-release control as part of the petitioner's sentence. *Id.* at 676. The petitioner unsuccessfully appealed and was ultimately denied review by the Ohio Supreme Court on April 4, 2012. *Id.* He then filed a federal habeas petition in March 2013. Relevant here, "the federal district court dismissed Crangle's habeas petition as untimely," concluding that AEDPA's one-year statute of limitations expired in December 2009 and that his resentencing was not a new judgment that restarted the statute of limitations clock. *Id.*

The Sixth Circuit disagreed. The Court explained, "[t]he interpretation of 'judgment' in *Magwood* and *King* applies with equal force to § 2244(d)(1)(A) and § 2254(a)." *Id.* at 678. "Accordingly, because the sentence is the judgment, a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment." *Id.* (internal citation, quotation marks, and alteration omitted). The Sixth Circuit, therefore, concluded that *Magwood* and *King* abrogated *Bachman I*, *id.*, the case that Respondent relies on here, and found that the petition was timely filed, *id.* at 680.

Respondent maintains that *Bachman I* was decided prior to *Crangle* and that a later panel cannot overrule a prior published decision. (Doc. 6 at 22–24). Respondent argues, therefore, *Bachman I* still controls here. (*Id.*).

While much of this case is difficult, resolving this argument is not. This Court has repeatedly rejected Respondent's argument. *See, e.g.*, *Watkins v. Warden, Madison Corr. Inst.*, No. 2:18-cv-590, 2018 WL 3142854, at *4 (S.D. Ohio June 26, 2018) (citing *McKinney v. Warden, Warren Corr. Inst.*, No. 2:14-cv-1992, 2017 WL 2336009, at *10–11 (S.D. Ohio May 30, 2017)); *Norris v. Bunting*, No. 2:15-cv-764, 2017 WL 749200, at *7–8 (S.D. Ohio Feb. 27, 2017). And, more importantly, so has the Sixth Circuit in another case involving Bachman. *See Bachman v. Wilson*, 747 F. App'x 298 (6th Cir. 2018) ("*Bachman II*").

Bachman was convicted of eight counts of sex-related crimes in 1995. *Id.* at 299. "In 2000 and again in 2005, he filed federal habeas petitions, in which he claimed that his appellate counsel had provided constitutionally ineffective assistance by failing to raise a claim regarding the erroneous submission of a trial exhibit to the jury." *Id.* Both of those petitions were dismissed. *Id.*

After being resentenced in state court in 2004 and designated as a sexual predator, Bachman "filed a Rule 60(b) motion seeking relief from the judgment in the 2000 federal habeas case," arguing that the statute of limitation period "began anew after direct review of his sexual predator designation." *Id.* at 300–01. The district court rejected that argument, and so too did the Sixth Circuit in its decision in *Bachman I*. *Id.* at 301. Bachman made the same argument when filing his 2005 habeas petition, which the district court again rejected based on *Bachman I*. *Id.* at 301–02.

Ten years later, the law in the Supreme Court and the Sixth Circuit had changed. Based on that change in decisional law, Bachman filed a Rule 60(b)(6) motion seeking relief from dismissal of his 2005 habeas petition. *Id.* at 302. After the district court denied the motion, on appeal, the Sixth Circuit addressed, among other things, the relationship between *Bachman I* and *Crangle*. *Id.* at 304. The Court explained:

> [I]n *Crangle* . . . , we resolved the statute of limitations question that this case presents. Although King had addressed only whether a new sentence restarted the second or successive count, we held in *Crangle*:
>
>> The interpretation of "judgment" in *Magwood* and *King* applies with equal force to § 2244(d)(1)(A) and § 2254(a). Accordingly, because "[t]he sentence is the judgment," *Burton v. Stewart*, 549 U.S. 147, 156, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (quotation omitted), a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment.

[838 F.3d] at 678. We recognized, therefore, that *Magwood* and *King* had abrogated [*Bachman I*]. *Id.*

The State argues that [*Bachman I*] is still the law, citing our general rule that a later panel of this court cannot overrule an earlier published decision. *See Moreland v. Robinson*, 813 F.3d 315, 325 (6th Cir. 2016). That rule does not hold, however, if "an inconsistent decision of the United States Supreme Court requires modification of the decision." *Id.* (quoting *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009)). In *Crangle*, we recognized that *Magwood*'s treatment of sentences and judgments under AEDPA was inconsistent with the approach we had articulated in [*Bachman I*], such that [*Bachman I*] was no longer good law. 838 F.3d at 678. That was not improper.

*Bachman II*, 747 F. App'x at 304.

In short, the Sixth Circuit has told us that *Crangle*, not *Bagley I*, controls here. Although *Bagley II* is unpublished, "[n]on-binding decisions can have great utility when binding decisions on the contested issue are scarce, and where the unpublished decision addresses exactly, or almost exactly the same issue as the court confronts." *Smith v. Astrue*, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009) (internal citations omitted). Because the Court in *Bachman II* confronted the same argument regarding the same issue before this Court, the Undersigned finds its reasoning persuasive. The Undersigned, therefore, concludes that Petitioner's 2010 resentencing started AEDPA's statute of limitations clock. *See Bachman II*, 747 F. App'x at 304.

Curiously, Respondent does not address *Bachman II* in her briefs. Respondent filed the instant Motion on June 25, 2018. (*See* Doc. 6). Counsel for Respondent represented the State of Ohio in the *Bachman II* appeal and raised the same arguments there that are before the Court here. *See Ronald Bachman v. Julius Wilson*, 16-3479, Doc. 17 at 15–20 (6th Cir. Apr. 14, 2017); *id.*, Doc. 31 at 15–22 (6th Cir. Oct. 12, 2017). After the Sixth Circuit rejected these arguments in *Bachman II*, the Undersigned reasonably could have expected Respondent to bring the decision to the Court's attention, particularly given the emphasis Respondent placed on *Bachman I* and

*Crangle* in her Motion, (*see* Doc. 6 at 19–24). Instead, it was Petitioner who cited *Bachman II* in his Supplemental Memorandum, (Doc. 9 at 8).

In her reply, Respondent offers one final argument in support of her contention that *Crangle* does not apply. According to her, "*Crangle* is inapplicable because Avery did not receive a 'worse than before' sentence at the 2010 resentencing hearing." (Doc. 10 at 4).

First, Respondent has arguably waived this argument because she raised it for the first time in her reply. *See Bormuth v. Cty. of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) ("[A]rguments made to us for the first time in a reply brief are waived." (citation omitted)). Second, Respondent's argument fails on the merits. Assuming for the sake of argument that *Crangle* requires a "worse than before" sentence in order for a new judgment to reset AEDPA's statute of limitations clock, that is exactly what Petitioner received at his 2010 resentencing. Petitioner was originally sentenced to a term of thirty years imprisonment and designated a sexual predator. (Doc. 5, PAGEID #: 58–61). That sentence did not include a mandatory term of post-release control. (*See* Doc. 5-1, PAGEID #: 572–73 (ordering a de novo sentencing because the original sentence did not include a mandatory term of post-release control)). But Petitioner's 2010 sentence did, in fact, include a mandatory five-year term of post-release control, in addition to the terms of the original sentence. (*See id.*, PAGEID #: 579–84). Because "[p]ost-release control materially increases the potential restrictions on [Petitioner's] liberty," his 2010 sentence was "worse than before," and *Crangle* applies. *Crangle*, 838 F.3d at 677–80. AEDPA's statute of limitations clock reset accordingly. *Id.*

Thus, this Court concludes that Petitioner's judgment of conviction became final under the provision of § 2244(d)(1)(A) on April 17, 2012, ninety days after the Ohio Supreme Court's January 18, 2012 dismissal of Petitioner's re-sentencing appeal, when the time period expired to

file a petition for a writ of certiorari to the United States Supreme Court. *See McKinney*, 2017 WL 2336009, at *11 (citing *Bronaugh v. Ohio*, 235 F.3d 280, 283–84 (6th Cir. 2000)). The statute of limitations began to run on the following day, and expired one year later, on April 18, 2013. Petitioner submitted the instant petition to prison officials for mailing on April 12, 2018. (Doc. 1, PAGEID # 16). Therefore, this action is time-barred, unless equitable tolling or another exception to the one-year statute of limitations applies.

### B. Equitable Tolling

AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649. (citation and internal quotation marks omitted). "[T]he diligence prong . . . covers those affairs within the litigant's control," and "the extraordinary-circumstances prong, by contrast, . . . cover[s] matters outside its control." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016).

"Whether equitable tolling is warranted is a fact-intensive inquiry best left to the district courts." *Robertson v. Simpson*, 624 F.3d 781, 785–86 (6th Cir. 2010); *see also Holland*, 560 U.S. at 654 (recognizing the prudence of allowing lower courts to first undertake the "equitable, often fact-intensive" inquiry of equitable tolling (citation and internal quotation marks omitted)). Decisions regarding equitable tolling must therefore be made "on a case-by-case basis." *Id.* at 649–50 (citation and internal quotation marks omitted). This approach emphasizes the need for "flexibility," rather than the application of "mechanical rules." *Id.* at 650. While prior precedent may be useful in guiding a court's equitable tolling analysis, "specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* Ultimately,

"[e]quitable tolling is granted sparingly . . . , with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (citing *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

### 1. Diligence

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653. "Whether diligence has been exercised is a fact-intensive inquiry that depends on the totality of circumstances in a particular case." *Bowling v. Lee*, No. 2:17-CV-35-RLJ-MCLC, 2018 WL 1595789, at *4 (E.D. Tenn. Mar. 30, 2018) (citations and internal quotation marks omitted).

Petitioner is 56-years-old and has a high school education. (Doc. 18 at 4:3–15). From 2001 or 2002 until the appointment of Mr. Twombly in October 2018, Petitioner represented himself *pro se* in all federal habeas proceedings. (*Id.* at 7:12–21). Petitioner has not had any legal training. (*Id.* at 4:9–10).

For the past 16 years, Petitioner has been incarcerated in Marion Correctional Institution. (*Id.* at 4:16–19). During that time, he has had two sources of legal information: conversing with other inmates or conducting his own research. (*Id.* at 7:3–9). Like all inmates, Petitioner's ability to conduct legal research is limited by his conditions of confinement. On an average weekday, he works six to seven hours, eats three meals, is confined to his cell for several hours a day for the institutional count, and participates in various prison programs. (*Id.* at 4:20–7:2). The prison law library is generally open to Petitioner five days a week for an hour per day. (*Id.* at 8:7–12). It has eight computers: four for word processing and four for conducting legal research on LexisNexis. (*Id.* at 9:10–16). Inmates with time-sensitive legal needs can apply to library staff for a legal pass

that provides them "an extended period of time in the law library." (*Id.* 42:6–14). Depending on whether he has a legal pass, Petitioner can use the computers for 20-30 minutes at a time. (*Id.* at 9:18–25). Some days he cannot go to the library because of his work schedule or because he does not have a legal pass. (*Id.* at 8:20–9:1).

Petitioner, proceeding pro se, timely filed the 2013 Petition in this Court on January 23, 2013. *See supra* at 15–16 (finding that "Petitioner's judgment of conviction became final under the provision of § 2244(d)(1)(A) on April 17, 2012, ninety days after the Ohio Supreme Court's January 18, 2012 dismissal of Petitioner's re-sentencing appeal, when the time period expired to file a petition for a writ of certiorari to the United States Supreme Court. The statute of limitations began to run on the following day, and expired one-year later, on April 18, 2013." (internal citation omitted)). Respondent moved to dismiss the 2013 Petition, or, in the alternative, to transfer it to the Sixth Circuit. *See Avery v. Bunting*, 2:13-cv-00097-GLF-TPK, Doc. 12 (S.D. Ohio). Although Petitioner argued that his 2010 resentencing constituted a new judgment in light of *Magwood*, this Court and the Sixth Circuit disagreed and found that Petitioner could not proceed with the 2013 Petition because it was second or successive. (*See* Doc. 5-2, PAGEID #: 880–84; *id.*, PAGEID #: 893–97).

At that point in time, Petitioner thought he was out of options to challenge the Sixth Circuit's May 2014 decision. (Doc. 18 at 12:9–11). That belief was not unreasonable. He could not request that the panel or the Sixth Circuit en banc rehear his petition, and he could not file a petition for a writ of certiorari with the United States Supreme Court. 28 U.S.C. § 2244(b)(3)(E); *see also In re King*, 190 F.3d at 480 ("[O]nce a panel of this court grants or denies an individual permission to file a second or successive petition in the district court, § 2244(b)(3)(E) prohibits any party from seeking further review of the panel's decision, either from the original panel or

from the en banc court.").  Because he thought he had reached the end of the road, he did not

continue to research the *Magwood* issue.  (Doc. 18 at 12:9–20).

In May 2017, relying on *King* and *Stansell*, the Sixth Circuit issued an order holding that

Smith, Petitioner's fellow inmate at Marion Correctional Institution, could file a federal habeas

petition to challenge his new judgment following a limited resentencing to impose mandatory post-

release control.  *In re Ralph Blaine Smith*, Case No. 16-4699, Doc. 9-2 (6th Cir. May 11, 2017).

Shortly thereafter, Smith informed Petitioner of that decision.  (Doc. 18 at 12:25–13:5).  Petitioner

promptly recognized the relevance of Smith's case to his own and, approximately two months

later, filed a motion for leave to file a second or successive habeas petition.  (Doc. 5-2,

PAGEID #: 898–910).  The Sixth Circuit found that there was "no procedural impediment" to

Petitioner filing a new habeas action in this Court, and, approximately two months later, Petitioner

filed the instant Petition.  (*See* Doc. 1-1; Doc. 1).

Given these circumstances, this Court must decide whether Petitioner exercised his rights

diligently.  The Sixth Circuit's decision in *Jones v. United States* is instructive.  689 F.3d 621 (6th

Cir. 2012).  In April 2005, Jones was convicted of being a felon in possession of a firearm and

deemed to be an armed career criminal under the Armed Career Criminal Act.  *Id.* at 623.  "Jones

filed his first motion pursuant to 28 U.S.C. § 2255 on July 10, 2009, seeking relief pro se on the

basis of *Begay* [*v. United States*, 553 U.S. 137 (2008)]."  *Id.*  "*Begay* was announced April 16,

2008, but Jones claimed that he did not hear of the decision until other prisoners informed him of

it in May 2009."  *Id.*  The district court denied Jones' motion because it concluded that his *Begay*

claim was time-barred and that he was not entitled to equitable tolling.  *Id.*

The Sixth Circuit disagreed and concluded that Jones was entitled to equitable tolling.  *Id.*

at 626–28.  Acknowledging that Jones' motion was filed 15 months after *Begay* was issued, the

Sixth Circuit emphasized that Jones: had been separated from his legal materials due to a series of prison transfers, was partially illiterate, and suffered from a variety of medical conditions, all of which in combination caused him to rely on other prisoners to learn about developments in the law. *Id.* at 627. In view of those facts, the Sixth Circuit concluded that Jones "was not sleeping on his rights and was diligent in pursuing new claims and [his *Begay* claim] in particular once he became aware of its existence." *Id.* at 628. The Sixth Circuit provided context for its decision, explaining that "it would strain credulity to suggest that a defendant has the same level of access to information about the issuance of new Supreme Court cases as he does about his direct appeal." *Id.* at 627 n.4. "Inmates without attorneys typically become apprised of Supreme Court developments only through the prison grapevine, which is hardly a model of speed or accuracy." *Id.* The Sixth Circuit, thus, found that Jones was diligent in pursuing his rights and entitled to equitable tolling. *Id.* at 626–28.

*Jones* offers two important lessons. First, when evaluating a pro se prisoner's diligence in pursuing his rights, courts should consider the realities of prisoners' conditions of confinement. *See id.* at 627 n.4. Second, in certain circumstances, a pro se prisoner should not be faulted for failing to stay apprised of new legal developments through his or her own research. *See id.* at 628. When a pro se prisoner learns of developments in the law through the prison grapevine, courts may consider that fact in evaluating the diligence requirement. *See id.* These lessons are consistent with the guidance the Supreme Court offered in *Holland*; a petitioner is required to exercise "reasonable diligence, not maximum feasible diligence," *Holland*, 560 U.S. at 653, and reasonableness is inherently a fact-intensive inquiry.

The Undersigned recognizes the factual differences between *Jones* and the present case. Unlike the petitioner in *Jones*, petitioner is not partially illiterate and was not subject to a series of

prison transfers.  *Cf. Jones*, 689 F.3d at 627.  But those factual differences do not limit the application of *Jones*' holding.  *See Robertson*, 624 F.3d at 785–86 ("Whether equitable tolling is warranted is a fact-intensive inquiry best left to the district courts."); *Bowling*, 2018 WL 1595789, at *4 ("Whether diligence has been exercised is a fact-intensive inquiry that depends on the totality of circumstances in a particular case." (citations and internal quotation marks omitted)).

If anything, the facts in this case are more compelling than those in *Jones*.  Petitioner timely filed his 2013 Petition.  Although the Sixth Circuit initially concluded in its 2014 Order that petition was second or successive, Petitioner, proceeding pro se, made the same argument it later adopted in *King* and *Stansell*.  Once Petitioner learned from his fellow inmate Smith of potential new grounds to challenge the 2014 Order, he quickly filed a successful motion for leave to file a second or successive petition.  And once the Sixth Circuit directed Petitioner to file a new habeas petition in this Court, Petitioner promptly did so.  Under the unique facts of this case, Petitioner demonstrated reasonable diligence in pursuing his rights.  *See Jones*, 689 F.3d at 626–28.

Respondent disagrees.  (*See* Doc. 6 at 28; Doc. 10 at 4; Doc. 20 at 7–9).  First, she argues, Petitioner's failure to seek relief from the district court's September 14, 2013 decision or the Sixth Circuit's 2014 Order demonstrates a lack of diligence.  (*See* Doc. 20 at 7–8).  But neither of those options was available to Petitioner.  Seven days after this Court's decision transferring the 2013 Petition to the Sixth Circuit as second or successive, Petitioner's case was docketed with the Court of Appeals, and this Court lost jurisdiction to consider any motion for reconsideration.  *See Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015) (holding that a district court loses jurisdiction over a habeas petition when it is "physically transferred to the Sixth Circuit").  *King* and *Stansell* were not issued until more than two years later.  Petitioner therefore did not have a basis to ask the Court to reconsider its September 14, 2013 decision in the seven-day window before the case was

transferred to the Sixth Circuit. Nor, as previously discussed, did Petitioner have a good faith basis for asking the Sixth Circuit to reconsider its 2014 Order or to petition the Supreme Court for a writ of certiorari. *See* 28 U.S.C. § 2244(b)(3)(E); *In re King*, 190 F.3d at 480 ("[O]nce a panel of this court grants or denies an individual permission to file a second or successive petition in the district court, § 2244(b)(3)(E) prohibits any party from seeking further review of the panel's decision, either from the original panel or from the en banc court."). Petitioner cannot be faulted for failing to pursue non-existent options.

Second, Respondent asserts that Petitioner's "own actions fail to demonstrate diligence" because he failed to research *Magwood*-related issues or file another second or successive petition after the Sixth Circuit's 2014 Order. (Doc. 20 at 8). She contends that Petitioner had ample access to legal resources and that his status as a pro se prisoner does not excuse his lack of diligence. (*Id.* at 7–9). True, Petitioner did not attempt to file another second or successive petition before he spoke with Smith in May 2017. But prior to speaking with Smith in May 2017, Petitioner was unaware of *King* and *Stansell* and would have had no basis for filing such a petition. It is also true that Petitioner did not continue to research *Magwood*-related issues after the Sixth Circuit's 2014 Order. But, as discussed above, Petitioner reasonably believed that he was out of options to challenge the Sixth Circuit's 2014 Order. (*See* Doc. 18 at 12:9–11); *see also* 28 U.S.C. § 2244(b)(3)(E); *In re King*, 190 F.3d at 480. And, as *Jones* tells us, Petitioner demonstrated reasonable diligence by promptly challenging the 2014 Order when he learned of potential grounds for doing so from his fellow inmate, Smith. *See* 689 F.3d at 626–28.

    ii.    *Extraordinary Circumstances*

To satisfy the extraordinary circumstances element, a petitioner must demonstrate that an external obstacle—something outside the petitioner's control—prevented the timely filing of a

habeas petition. *Holland*, 560 U.S. at 649. As a result, this element "is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." *Menominee Indian Tribe of Wis.*, 136 S. Ct. at 756.

Consistent with this guidance, courts have recognized extraordinary circumstances in a variety of factual scenarios. *See, e.g.*, *Maples v. Thomas*, 565 U.S. 266, 283 (2012) (holding that attorney abandonment could potentially establish extraordinary circumstances justifying equitable tolling); *Clutter v. Meko*, No. 16-6658, 2017 WL 5514684, at *1 (6th Cir. May 3, 2017) (collecting cases) ("We have equitably tolled the running of 28 U.S.C. § 2244(d)'s one-year limitations period in a limited class of cases involving an unanticipated change in the law that had the effect of shortening the statutory limitations period."); *Ata*, 662 F.3d at 742 ("[A] petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations.").

The Undersigned finds that the unique facts of this case satisfy the extraordinary circumstances requirement. Several key points support this conclusion. First, there is no question that the delay in filing the instant petition was due to external factors outside of Petitioner's control. After his new judgment from the 2010 resentencing became final, Petitioner timely filed the 2013 Petition. When that petition was transferred to the Sixth Circuit, Petitioner, without the aid of counsel, made the same argument that the Court of Appeals would later adopt in *King* and *Stansell*. The Sixth Circuit, nonetheless, issued its 2014 Order, finding that the 2013 Petition was second or successive. The 2014 Order was the sole impediment to Petitioner proceeding with the timely filed 2013 Petition. When Petitioner learned of potential new grounds to challenge that order, he promptly filed a successful motion with the Sixth Circuit and then a new petition in this Court. In

view of the foregoing, the Undersigned is left with a question: What more could Petitioner have done to ensure that his current petition was filed in as timely a manner as possible?

Second, in its 2018 Order, the Sixth Circuit concluded that Petitioner "faces no procedural impediment to filing a new § 2254 action in the district court and does not need the authorization of this court to file such an action." (Doc. 1-1, PAGEID #: 24). In so holding, the Sixth Circuit expressly found that Petitioner is entitled to the benefit of its decisions in *King* and *Stansell* and that its 2014 Order was erroneous. Petitioner is not, therefore, simply relying on a change in decisional law to support his request for equitable tolling. Rather, he is relying on a change in law from which the Sixth Circuit has already found he should benefit.

Third, fairness is central to the principle of equity. *Freeman v. Pitts*, 503 U.S. 467, 487 (1992) ("The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision."); *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 31 (1971) ("[W]ords are poor instruments to convey the sense of basic fairness inherent in equity[.]"). And fairness dictates that similarly-situated individuals should be treated similarly. A comparison of Petitioner and DeLawrence King illustrates this principle. After being resentenced in Ohio state court to sentences including mandatory post-release control, both men filed timely federal habeas petitions that the district court deemed to be second or successive. Both relied on *Magwood* and argued their new judgments entitled them to challenge their undisturbed underlying convictions. The only difference between the two was their representation: Petitioner represented himself *pro se*, and King was represented by two of the country's leading appellate advocates. King was then permitted to proceed with his petition in the district court, and Petitioner was not. Equitable tolling

can "accord all the relief necessary to correct" this "particular injustice[]." *Holland*, 560 U.S. at 650 (citation and internal quotation marks omitted).

Fourth, as the Supreme Court recognized in *Holland*, "specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* To the best of the Court's knowledge, the facts of this case are sui generis. Neither party has identified a case with facts like those presented here, and the Court has not been able to identify any through its own research. In addition to the ethical obligation the parties have to bring such a case to the Court's attention, counsel in the Ohio Attorney General's Criminal Justice Section are the most experienced and knowledgeable habeas litigators that appear before this Court. The Undersigned is confident that, if a case like this one existed, Respondent would have brought it to the Court's attention. On the unique facts before the Undersigned, equitable tolling is appropriate.

Respondent offers a number of counter-arguments (*see* Doc. 6 at 28–29; Doc. 10 at 2–4; Doc. 20 at 10–13), but none are persuasive. According to Respondent, "neither a petitioner's pro se status nor his professed ignorance of the law will justify equitable tolling of the limitations period for filing a federal habeas petition." (Doc. 6 at 28 (citing *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005)). That is an accurate statement of the law so far as it goes. But, as discussed above, Petitioner's pro se status and lack of legal knowledge are not the sole basis for the Undersigned concluding that Petitioner has demonstrated extraordinary circumstances warranting equitable tolling.

What about Respondent's argument that "this case is not the appropriate action in which to litigate" whether "the Sixth Circuit erroneously concluded that [the 2013 Petition] was a second or successive petition"? (Doc. 20 at 12). That issue does not need to be litigated here because the Sixth Circuit has already resolved it for us. (*See* Doc. 1-1); *In re Stansell*, 828 F.3d at 420; *King*,

807 F.3d at 157. The Undersigned's extraordinary circumstances analysis simply recognizes that fact.

Finally, Respondent contends that Petitioner cannot rely on a simple change in the law to satisfy the extraordinary circumstances element. (*See* Doc. 20 at 12–13 (citing *Gonzalez v. Crosby*, 545 U.S. 524 (2005)). "It is well established that a change in decisional law is usually not, by itself, an extraordinary circumstance meriting Rule 60(b)(6) relief. Instead, a change in the law must typically be coupled with some other special circumstance in order to warrant relief under Rule 60(b)(6)." *Bachman II*, 747 F. App'x at 305 (citations and internal quotation marks omitted). And courts have analogized the Rule 60(b)(6) extraordinary circumstances analysis to that in equitable tolling. *See Ruiz v. McGuire*, 2017 WL 526542, at *4 n.9 (S.D. Cal. Feb. 9, 2017) ("Analysis of extraordinary circumstances in equitable tolling is similar to the establishment of extraordinary circumstances in a Rule 60(b)(6) motion." (citation omitted)).

As with most rules, there are exceptions. *See Bachman II*, 747 F. App'x at 305 ("It is well established that a change in decisional law is ***usually*** not, by itself, an extraordinary circumstance meriting Rule 60(b)(6) relief." (emphasis added) (citation and internal quotation marks omitted)). And the Sixth Circuit has recognized exceptions in the equitable tolling context. *See Clutter*, 2017 WL 5514684, at *1 ("We have equitably tolled the running of 28 U.S.C. § 2244(d)'s one-year limitations period in a limited class of cases involving an unanticipated change in the law that had the effect of shortening the statutory limitations period.").

More importantly, special circumstances exist here for the reasons described above. Petitioner timely filed his 2013 Petition. When he challenged the district court's conclusion that the petition was second or successive, Petitioner made the same argument that other petitioners, like King, made, but he was denied while they were permitted to proceed. The Sixth Circuit has

already found that its 2014 Order was erroneous and that Petitioner was entitled to the benefit of its subsequent decisions in *King* and *Stansell*. (*See* Doc. 1-1). Petitioner is not relying on a simple change in law to satisfy the extraordinary circumstances element, and Respondent's argument therefore fails.

## V.    CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Respondent's Motion (Doc. 6) be **DENIED**. If this Report and Recommendation is adopted by the District Court, it is **ORDERED** that Respondent shall file an answer conforming to the requirements of Rule 5 of the Rules Governing § 2254 Cases within 60 days of the issuance of the District Court's Order. Finally, Petitioner's Request to Hold Action in Abeyance (Doc. 2) is **DENIED as moot**.

**<u>Procedure on Objections</u>**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: March 28, 2019                    /s/Kimbery A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE